UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GSE CONSULTING, INC.,
A Washington corporation,

              Plaintiff,

vs.                                                    Case No: 6:20-cv-01853-Orl-37DCI

L3HARRIS TECHNOLOGIES, INC.,
a Delaware corporation, formerly
known as HARRIS CORPORATION,

              Defendant.

---

**DEFENDANT L3HARRIS TECHNOLOGIES, INC.'S RESPONSE TO
PLAINTIFF GSE CONSULTING, INC.'S MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW[1]**

Defendant, L3Harris Technologies, Inc., formerly known as Harris

Corporation ("L3Harris"), pursuant to Fed. R. Civ. P. 56, responds to Plaintiff, GSE

Consulting, Inc.'s ("GSE") Motion for Summary Judgment & Incorporated

Memorandum of Law (Doc. 56, hereinafter, the "Motion"), and states as follows:

## I.  INTRODUCTION

While not evident from GSE's Motion, this is a simple case. The sole question

is whether there has been a sale, merger or transfer of intellectual property under the

Consulting Agreement. From the outset, GSE has pretended that the parol evidence

rule does not exist. Now, it begs the Court to enter summary judgment based entirely

---

[1] L3Harris incorporates by reference its Motion for Summary Judgment (Doc. 51).

upon inadmissible parol evidence. Under the guise of "argument," it attempts to rewrite the Consulting Agreement's language "in the event **the IP** is sold, merged, or transferred…" of the IP Merger Provision to state "in the event **[Harris Corporation]** is sold, merged, or transferred…" From there, GSE spins its wheels attempting to prove that Harris Corporation was a party to a merger. But that is not what the IP Merger Provision requires.

The express, literal language of the fully integrated Consulting Agreement is clear and unambiguous. GSE's Motion must be denied.

## II.    BACKGROUND

The IP at issue here is held by Eagle Technology, LLC ("Eagle"), a subsidiary of Harris Corporation, now known as L3Harris. (Doc. 55, Blue Dep. 129:4-20; Doc. 60, Teichen Decl. ¶ 6). The IP remained with Eagle Technology both before and after the L3Harris Merger. *Id.* ¶ 7. No legacy intellectual property owned by L3 Technologies has ever been transferred to Eagle Technology. *Id.* Further, the L3 Technologies intellectual property never merged with the intellectual property held by Eagle. *Id.*

Ignoring the reality that the IP was not "sold, merged, or transferred," GSE contends that it is entitled to the IP Fee. GSE primarily relies upon an email exchange that preceded the Consulting Agreement in an effort to show that the IP Merger Provision contemplates a merger of Harris Corporation rather than what is stated in the provision itself - a merger of the IP. (Doc. 1 ¶ 18.) GSE further alleges that the IP Merger Provision was included "to mitigate the risk to GSE of the oil recovery

technology development program being minimized or shut down if the Intellectual Property was simply part of a larger corporate transaction...." (*Id.* ¶ 19.) This, of course, is not contained anywhere in the Consulting Agreement.

### A.    GSE's "Undisputed Material Facts" Section is Replete with Parol Evidence.

GSE's Motion is based entirely on inadmissible parol evidence. For most of its so-called "Undisputed Material Facts" section, GSE attempts to prove its subjective intent in entering into the Consulting Agreement. (Doc. 56 at 2-6.) It repeatedly refers to a declaration of GSE's principal, George Taylor (Doc. 52, Taylor Decl.) and a statement of Stephen Moore (Doc. 54, Moore Stmt), each of which serves no purpose other than to contradict the literal language of the IP Merger Provision. (Taylor Decl. ¶¶ 22-40, 42; Moore Stmt ¶¶ 13-26, 28, 30.) In doing so, GSE puts the proverbial cart before the horse by trying to inject parol evidence to vary the terms of the Consulting Agreement.

GSE also holds out as "undisputed material facts" that "Section 6 [of Attachment F] is a risk mitigation section for both Harris and GSE" (Doc. 56 at 4), and that "the intention for [the IP Merger Provision] was to mitigate the risk to GSE of the RF Heating Program being minimized or shut down...." (*Id.* at 5.) Neither of these purported "undisputed material facts" appear in the Consulting Agreement.

Interestingly, nowhere in its "Undisputed Material Facts"—or its entire Motion—does GSE address the Consulting Agreement's integration clause and Reliance on Counsel provision. This is no accident. The integration clause provides:

> **ENTIRE AGREEMENT. This Agreement states the entire Agreement between the parties with respect to the subject matter, and all prior and contemporaneous understandings, representations, and agreements whether oral or in writing are merged herein and superseded hereby.** No alteration, modification, release, or waiver of this Agreement or any of the provisions herein contained shall be effective unless agreed to in writing and executed by both parties.

Consulting Agreement § 22 (emphasis added). And the Consulting Agreement's "Reliance on Counsel" provision provides:

> Each party has had the opportunity to consult with legal, financial, technical and any other experts it deems necessary or desirable before entering into this Agreement. **Each Party represents and warrants that it has read, knows, understands and agrees with the terms and conditions of this Agreement. All discussions, estimates, or projections developed by a Party during the course of negotiating the terms and conditions of this Agreement are by way of illustration only and unless specifically contained in this Agreement, are not binding or enforceable against the other Party** in law or in equity.

*Id.* § 20(a) (emphasis added).

These clear provisions, coupled with the application of the parol evidence rule, are fatal to GSE's case.

## B. The Remainder of GSE's "Undisputed Material Facts" is a Series of Semantic Arguments Couched as "Facts" Regarding the L3Harris Merger.

After hanging its hat on parol evidence of pre-contract communications, GSE then proceeds to completely ignore the nature of the L3Harris Merger:

First, it claims that "there was a merger that created the combined entity L3Harris." (Doc. 56 at 10.) This is simply wrong. L3Harris is not a "combined entity."

4

As GSE even admits, L3 Technologies did not merge with Harris Corporation; it merged with Harris Corporation's *subsidiary*. (*Id.* at 7) L3 Technologies is still a separate entity. (Doc. 51-2, Johnson Decl. ¶ 8). Under Florida law, "[a] parent corporation and its wholly-owned subsidiary are separate and distinct legal entities." *Roundtree v. TGM Malibu Lakes, LLC*, No. 2:18-CV-289-FTM-29CM, 2018 WL 4215949, at *2 (M.D. Fla. Sept. 5, 2018) (quoting *Am. Int'l Grp., Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 336 (Fla. 2d DCA 2004).

Second, GSE declares that "the intellectual property of both L3 and Harris, and their subsidiaries, was part of the merger[.]" (Mot. 56 at 10.) **Once again, the intellectual property never merged.** (Blue Dep. 129:11-14.) It is still held by Eagle. (*Id.*; Teichen Decl. ¶ 7). Likewise, the intellectual property owned by L3 Technologies, Inc. has never been transferred to Eagle. (Teichen Dep. 11:2-11) or merged with intellectual property owned by Eagle. (Teichen Decl. ¶ 7-8).

Third, GSE claims that "there was a new market capitalization for the formed company, L3Harris." (Doc. 56 at 10.) Here, it slings the terms "formed company" and "new market capitalization" to imply that L3Harris is a newly formed entity. That is inaccurate; Harris Corporation and L3Harris are the same entity. (Johnson Decl. ¶ 8).

### III.    MATERIAL FACTS AS TO WHICH THERE ARE GENUINE ISSUES FOR TRIAL

GSE's "Undisputed Material Facts" section contains facts which are completely immaterial and is replete with inadmissible parol evidence. L3Harris notes that the following material facts exist for which there are genuine issues for trial:

> **GSE contends that Harris representatives and Mr. Taylor discussed that Section 6.b.i. was designed to mitigate risk to GSE if the RF Heating Program was minimized or shut down. (Doc. 56 at 4-5)**

Aside from the fact that this is inadmissible parol evidence, this alleged fact is contradicted by Taylor's own deposition testimony that Harris Corporation, like other companies, could have shut down the RF Energy business at any time, and not just after a merger – a risk he fully understood. (Doc. 52, Taylor Dep. 102:19-103:1.) Thus, in reality, GSE's alleged "risk mitigation provision" did not mitigate risk at all. In addition, despite extensive productions by both parties of the drafts of the Consulting Agreement and notes and communications relating thereto, there is not a single document discussing this alleged risk provision. (*Id.* at 104:4-10.) Simply put, 6.b.i. is not a "risk mitigation provision."

## IV.    ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). However, summary judgment evidence must state facts that would be admissible at trial. *Funderburk v. Fannie Mae*, 654 F. App'x 476, 477 (11th Cir. 2016).

Parol evidence is inadmissible to vary or contradict the clear and unambiguous language of a contract. *Uransky v. First Fed. Sav. & Loan Ass'n of Fort Myers*, 684 F.2d 750, 755 (11th Cir. 1982). The parol evidence rule "applies when the parties intend that a written contract incorporate their final and complete agreement." *Johnson Enter.*

*of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1309 (11th Cir. 1998).[2] This intent may be demonstrated through the use of a merger or integration clause. *Id*. Where, as here, the contract is complete and unambiguous, it is well settled that the contract must be enforced in accordance with the terms used. *Solymar Investments, Ltd. v. Banco Santander*, 672 F. 3d. 981, 991 (11th Cir. 2012).

The parol evidence that GSE relies so heavily upon cannot be considered for purposes of its Motion. *Asphalt Ref. & Tech. Co., LLC v. Underwriters at Lloyd's London*, 416 F. App'x 815, 817-18 (11th Cir. 2011); *Harris v. Siegel*, 438 F. Supp. 510, 512 (S.D. Fla. 1977) ("Because such evidence would be inadmissible at trial, it is improper for this court to consider it in its determination of this motion for summary judgment.").

### A.    GSE Pretends the Parol Evidence Rule Does Not Exist.

GSE admits that the IP Merger Provision is unambiguous. (Doc. 56 at 13; Doc. 41, Def.'s Req. for Admis. ¶ 10; Pl's Resp. to Def.'s Req. for Admis. ¶ 10) (admitting that the IP Merger Provision is "clear and unambiguous"). Even so, it beseeches the Court to contradict the express, literal language of the IP Merger Provision with parol evidence. However, "a written document intended by the parties to be the final embodiment of their agreement **may not be contradicted, modified or varied by parol evidence**." *King v. Bray*, 867 So. 2d 1224, 1226 (Fla. 5th DCA 2004).

The Consulting Agreement's integration clause is dispositive of this case. The purpose of an integration clause is "to affirm the parties' intent to have the parol

---

[2] "The rule is one of substantive law, not evidence, so it is applied by federal courts sitting in diversity." *Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000).

evidence rule applied to their contracts." *Centennial Mortg., Inc. v. SG/SC, Ltd.,* 772 So. 2d 564, 565 (Fla. 1st DCA 2000). An integration clause "**is likely to conclude the issue whether the agreement is completely integrated**." *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 (Fla. 1st DCA 2005) (emphasis added). The integration clause here underscores the parties' intent that the Consulting Agreement is final and complete. Thus, the Court should not consider prior drafts of the Consulting Agreement or any discussions leading up to the final Consulting Agreement. *King*, 867 So. 2d at 1226.

GSE is attempting to manufacture an ambiguity that does not exist through the use of parol evidence, in contravention of Florida law. *Chase Manhattan Bank v. Rood*, 698 F.2d 435, 437 (11th Cir. 1983) ("Parol evidence may not be used to create ambiguity in an unambiguous agreement.") (applying Florida law); *State Bank of Tallahassee*, 407 So. 2d at 1083 ("The testimony here related only to the intent of the parties at the time the guaranty contract was executed. **Such parol evidence of intent was not admissible**.") (emphasis added); *Vencor Hospitals v. Blue Cross Blue Shield of R.I.*, 284 F.3d 1174, 1179 (11th Cir. 2002) ("courts are barred from using evidence to create an ambiguity to rewrite a contractual provision[.]").

In *Clayton v. Poggendorf*, the Fourth DCA held that it was reversible error for a trial court to consider parol evidence of subjective intent without first finding the contract to be ambiguous. 237 So. 3d 1041 (Fla. 4th DCA 2018). *Clayton* involved a settlement agreement that was unambiguous, like the Consulting Agreement. *Id*. at 1044. The trial court allowed the plaintiff to testify regarding its subjective intent

regarding a disputed provision and essentially rewrote the contract based on this inadmissible parol evidence. *Id*. at 1048. The Fourth DCA reversed, holding that "**[t]his evidence was not 'extrinsic' to the contract... Instead, it went to the heart of the negotiation of the agreement**." *Id*. (emphasis added). The *Clayton* court also noted that the contract, like the Consulting Agreement, contained an integration clause, and by contradicting the final, written document "the court added terms to the agreement contrary to this clause." *Id*.

"[W]here the language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions[.]" *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). The Court may not consider evidence regarding GSE's subjective intent. *Clayton*, 237 So. 3d at 1048. This rule applies with greater force because the Consulting Agreement contains an integration clause. *Id*.

As explained in L3Harris's Motion for Summary Judgment (Doc. 51), applying a basic definition of the term "merge," the L3Harris Merger did not cause the IP "to be absorbed and disappear, to lose character or identity by absorption into something else." *Code Revision Comm'n for Gen. Assembly of Georgia v. Public.Resource.Org, Inc.*, 906 F.3d 1229, 1249 (11th Cir. 2018). The IP is still held by Eagle, exactly where it was held prior to the L3Harris Merger. (Blue Dep. 129:11-14.; Teichen Decl. ¶ 7). Consequently, under the plain language of the IP Merger Provision, GSE is not entitled to the IP Fee.

**B.    GSE's Interpretation of the IP Merger Provision is Illogical.**

For its first argument, GSE admits that the IP Merger Provision is unambiguous, but perplexingly argues that the IP "merged with the merger of Harris and L3, which formed a single, fully integrated company, L3Harris." (Doc. 56 at 13.) GSE isolates the words "merged" and "market capitalization" in Section 6.b of Attachment F without regard for the context in which those words are used. (*Id.*) This is improper contract interpretation. *See Horizons A Far, LLC v. Plaza N 15, LLC*, 114 So. 3d 992, 994 (Fla. 5th DCA 2012) (In interpreting a contract, "[c]ourts are not to isolate a single term or group of words and read that part in isolation; the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose.").

1.    **GSE argues that the IP Merger Provision contemplates a merger of Harris Corporation even though the IP Merger Provision does not reference a corporate merger whatsoever.**

GSE claims that "the merging of the Intellectual Property under [the IP Merger Provision] must refer to (1) a business transaction by Harris, (2) whereby the Intellectual Property is combined, and (3) the primary basis of which is not the Intellectual Property." (Doc. 56 at 15.) This is not defensible. The IP Merger Provision makes no reference to a "business transaction." That language is simply not there. The IP Merger Provision only references the sale, merger, or transfer of the IP, none of which occurred.

Despite first acknowledging that the IP Merger Provision requires the IP to be "combined," (*Id.*), GSE then contradicts itself to somehow conclude that the word

"merged" actually refers to a merger of Harris Corporation. That cannot be reconciled with the fact that the subject of the verbs "sold, merged, or transferred" in the IP Merger Provision is the IP. **It is not Harris Corporation**. The parties very easily could have drafted the IP Merger Provision such that Harris Corporation was the subject of the verbs "sold, merged, or transferred." They chose not to. As such, the IP Merger Provision must be construed as drafted.

Ignoring this, GSE claims that "every event other than merging of the [IP] that is described in Section 6.b. is a type of potential busines transaction by Harris." (Doc. 56 at 14.) But as GSE also admits, in a footnote, the only "business transactions" referenced in Attachment F are "the sale, transfer, and license of the [IP] and a 'business development'" involving the IP. (*Id.* at n. 18.)[3] So, despite admitting that a corporate merger is not one of the "business transactions" specified in Attachment F, GSE still argues that the IP Merger Provision contemplates a merger of Harris Corporation. There is simply nothing in the Consulting Agreement that suggests that this was the parties' intent.

GSE acknowledges that "[t]he court cannot rewrite contracts, add meaning that is not present or otherwise reach results contrary to the intentions of the parties." (Doc. 56 at 17-18) (quoting *Saha v. Aetna Cas. & Sur. Co.*, 427 So. 2d 316 (Fla. 5th DCA 1983). Still, that is exactly what it asks the Court to do here. To adopt GSE's interpretation

---

[3] A Business Development contemplates "a business entity created solely or jointly by [L3Harris]…" Consulting Agreement Attach. F § 4.

of the IP Merger Provision, the Court would have to judicially substitute the word
"IP" with "Harris Corporation." This the Court cannot do. *Saha*, 427 So. 2d at 317.

> ## 2.    GSE takes the term "market capitalization" entirely out of context.

To further support its interpretation, GSE isolates "market capitalization" in
Section 6.b of Attachment F to argue that "market capitalization clearly refers to the
market capitalization of a Company" and that "the only imaginable interpretation that
meets all of the above criteria is a merger involving Harris and another business
entity." (Doc. 56 at 15.) GSE's fixation on the words "market capitalization" is
misguided.

The phrase "market capitalization" is used in the context of the term "Payments
calculation for the following to be at 3% market capitalization." Consulting
Agreement Attach. F § 6. "Market capitalization" only comes into play if GSE first
demonstrates that there was an underlying trigger event to begin with—in this case, a
merger of the IP. Stated differently, "market capitalization" relates to the calculation
for the IP Fee, not the trigger event for the IP Fee.

GSE's interpretation also cannot be squared away with the other provisions of
Section 6.b of Attachment F, none of which relate to a merger of Harris Corporation.
In the IP Merger Provision, the other trigger events are the sale or transfer of the IP.
The remaining trigger events specified in Sections 6.b.ii and 6.b.iii apply, respectively,
to a license of the IP and the use of the IP in a "Business Development," where the

primary basis of the license or "Business Development" is not the IP. None of these trigger events necessitate "a merger involving Harris and another business entity."

Even if GSE was correct that the term "market capitalization" contemplates a merger involving Harris Corporation, GSE still has not shown that *the IP itself* was ever actually combined, which it admits is required even under its own interpretation. There is nothing in GSE's Motion that proves that the IP was ever combined. GSE makes only vague, fleeting references to the IP being "involved in" or "a part of" the L3Harris Merger. That is because the IP was not, in fact, ever combined with anything else. Rather, all of Harris' IP was transferred to its subsidiary, Harris International, Inc. which then assigned it to Eagle. The IP has remained with Eagle and has not been merged with IP from L3 Technologies. Teichen Decl. ¶ 7-8.

That aside, GSE's interpretation is simply unworkable. "[W]here one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner." *King*, 867 So. 2d at 1227. "An interpretation **is not reasonable if it requires rewriting the contract to add language that a party omitted** and in order to impose an obligation on the other party that was not in the original bargain." *John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, 443 F. App'x 396, 398 (11th Cir. 2011)  (applying Florida law) (emphasis added). The Court should not rewrite the Consulting Agreement.

**C.**    **GSE Completely Ignores the Distinction Between Latent and
Patent Ambiguities.**

GSE's second argument fares no better than its first. GSE contends that, even if
the IP Merger Provision is ambiguous, there is no genuine issue of material fact
regarding its meaning. (Doc. 56 at 18.) In doing so, it declares that parol evidence is
admissible to resolve any ambiguity in a contract.[4] That is simply wrong. "**A further
limitation on the receipt of parol evidence to explain ambiguous contractual
language is that the ambiguity must be latent as opposed to patent**." *Emergency Assoc.
of Tampa v. Sassano*, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995) (emphasis added).

The IP Merger Provision is unambiguous. Even if it was ambiguous, however,
the Court would first have to make a threshold determination as to whether the
ambiguity is latently or patently ambiguous. *Clayton*, 237 So. 3d at 1048. As explained
in further detail in L3Harris's Motion for Summary Judgment (Doc. 51), "[p]atent
ambiguities are on the face of the document, while latent ambiguities do not become
clear until extrinsic evidence is introduced and requires parties to interpret the
language in two or more possible ways." *Id.* at 1047 (internal citations omitted).
Though conveniently ignored in GSE's Motion, this distinction is critical - parol
evidence is only admissible to resolve latent ambiguities; it is not admissible to resolve
patent ambiguities. *Taylor v. Taylor*, 183 So. 3d 1121, 1122 (Fla. 5th DCA 2015).

---

[4] One of the cases relied upon by GSE in support of its statement that parol evidence is admissible to
resolve an ambiguity is *Solymar Investments*, 672 F. 3d 981 (11th Cir. 2012). In that case, the Eleventh
Circuit actually held that it could not consider parol evidence because the agreement contained an
integration clause. *Id.* at 987.

Here, GSE fails to demonstrate that the IP Merger Provision is ambiguous, let alone whether the ambiguity is latent or patent. It does not argue the existence of a patent ambiguity because it does not allege or assert that the Consulting Agreement contains "a genuine inconsistency, uncertainty, or ambiguity in meaning…." *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998).[5]

Nor does GSE allege or assert the existence of a latent ambiguity. It does not argue that the Consulting Agreement is "**facially clear** but an **extrinsic fact or extraneous circumstance creates a need for interpretation** or reveals an insufficiency in the contract or a failure to specify the rights or duties of the parties in certain situations." *Taylor*, 183 So. 3d at 1122 (emphasis added). To be clear, prior negotiations cannot give rise to a latent ambiguity because they are not "extrinsic" or "collateral" to the contract. *Clayton*, 237 So. 3d at 1047. Thus, GSE's lengthy discussion of pre-contract communications does not create a latent ambiguity because such evidence is not "extrinsic" or "collateral" to the Consulting Agreement. *Id.*

Because GSE fails to demonstrate that the Consulting Agreement is patently or latently ambiguous, it fails to show that the Consulting Agreement is ambiguous at all. "[U]nless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract." *Key*, 90 F.3d at 1549.

---

[5] As further argued in L3Harris's Motion for Summary Judgment (Doc. 56), if there is an ambiguity in the IP Merger Provision, it is patent because it appears on the face of the document.

### D. <u>GSE Ignores the Legal Effect of a Reverse Triangular Merger.</u>

In its third argument, GSE doubles down on its misguided theory that the IP Fee is owed because Harris Corporation was a party to a merger—except this time, it goes even further to argue that any merger, even one in which the IP was not merged, transferred, or assigned, would trigger its entitlement to the IP Fee. GSE notes that "merge" is a common term "when used in connection with a combination of entities" and that "Attachment F does not specify what kind of merger must occur in order for the payment obligation to be triggered, only that the Intellectual Property must be involved in a merger." (Doc. 56 at 21.) Once again, GSE ignores the clear language of the IP Merger Provision.

What "merge" means in the context of corporations is irrelevant. The IP Merger Provision does not reference a merger of Harris Corporation. Indeed, if "merge" is so commonly understood in that context of corporations, then certainly two sophisticated parties represented by counsel were capable of substituting "IP" with "Harris Corporation" in the IP Merger Provision. Yet, they did not.

Much like it attempts to muddy the waters to blur the distinction between a corporate merger and an intellectual property merger, GSE refuses to acknowledge the difference between a traditional corporate merger and a reverse triangular merger. To this end, GSE heavily relies on Black's Law Dictionary, which defines a corporate merger as "the uniting of two or more corporations by the transfer of property of all to one of them, which continues in existence, the others being swallowed up or merged therein." (Doc. 56 at 21.). Relying on this definition, GSE goes so far as to represent

that it is "undisputed" that Harris Corporation and L3 were parties to a traditional merger "by the transfer of property of all to one of them," (Doc. 56 at 21-22), a stunning misstatement of fact that is contradicted by the record. (Johnson Decl. ¶ 8); (Blue Dep. 129:11-14; Teichen Dep. 11:2-11; Teichen Decl. ¶ 8) ("**no legacy intellectual property owned by L3 Technologies, Inc. has ever been transferred to Eagle or merged with intellectual property owned by Eagle**") (emphasis added).

Rather conveniently, GSE does not mention that Black's Law Dictionary separately defines reverse triangular mergers in the same section in which traditional mergers are defined. A reverse triangular merger is defined as where "the acquiring corporation's subsidiary is absorbed into the target corporation, **which becomes a new subsidiary of the acquiring corporation**." Merger ¶ 8 *Corporations*, Black's Law Dictionary (11th ed. 2019) (emphasis added). "**Courts have described reverse triangular mergers as more similar to stock acquisitions than mergers**..." *Pub. Storage v. Sprint Corp.*, No. CV 14-2594-GW PLAX, 2015 WL 1057923, at *2 (C.D. Cal. Mar. 9, 2015) (citing *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH,* 62 A.3d 62, 83 (Del.Ch. 2013)) (emphasis added).

As discussed in L3Harris's Motion for Summary Judgment (Doc. 51), it is an undisputed matter of well-established law that a reverse triangular merger does not merge the assets between the parties to the merger. *Meso Scale Diagnostics*, 62 A.3d at 88 ("**a reverse triangular merger is not an assignment by operation of law**."); *High Point Sarl v. T-Mobile USA, Inc.*, 53 F. Supp. 3d 797 (D.N.J. 2014), *aff'd,* 640 F. App'x

917 (Fed. Cir. 2016) (citing *Meso Scale,* 62 A.3d at 86) ("[A] reverse triangular merger
generally is not an assignment by operation of law."); *Saginaw Prop., LLC v. Value City
Dep't Stores, LLC*, No. 08-13782-BC, 2009 WL 3536616, at *3 (E.D. Mich. Oct. 30,
2009) ("[t]his transaction is a reverse triangular merger because the target, Value City
Inc., survived as a separate entity with its **assets and liabilities <u>intact, and distinct
from its new shareholder-owner</u>**…") (emphasis added); *Disk Authoring Techs. LLC v.
Corel Corp.*, 122 F. Supp. 3d 98, 112 (S.D.N.Y. 2015) ("because the Corel–InterVideo
Acquisition was structured as a reverse triangular merger […] the InterVideo License
was not assigned to Corel Corp. by operation of law." (citing *Meso Scale*, 62 A.3d at
81-88)); *ALO, LLC v. Falsetti*, No. 218CV00208CASSKX, 2018 WL 1384457, at *1
(C.D. Cal. Mar. 15, 2018) ("**the rights and obligations of the target are not
transferred, assumed or affected in a reverse triangular merger**" (quoting *Meso Scale*,
62 A.3d at 82)) (emphasis added).

    GSE's entire argument is a semantic game. GSE slings the word "merge"
throughout is Motion without regard to the legal effect of a reverse triangular merger
and without regard to the context in which the word "merged" was used in the
Consulting Agreement. It makes no difference whether Harris Corporation merged
with or acquired L3 Technologies. The *IP* was never merged. (Blue Dep. 129:11-14.;
Teichen Decl. ¶¶ 7-8). GSE's Motion must be denied.

### E.   GSE's Argument that it is "Irrelevant" that the IP is Still with Eagle Simply Glosses Over a Key Element of this Case.

Even though the IP Merger Provision contemplates a sale, merger, or transfer of the IP, GSE dogmatically declares that it is irrelevant whether the IP was actually sold, merged, or transferred. This haphazard argument is the natural culmination of GSE's refusal to acknowledge that the IP Merger Provision contemplates a merger of the IP, not a merger of Harris Corporation. The statements that comprise this argument do not bear any connection to the conclusion GSE intended to reach:

*First*, GSE references the definition of "Company Intellectual Property" in the Agreement and Plan of Merger to claim that "the intellectual property of both L3 and Harris was involved in the merger…." (Doc. 56 at 22-23.) This completely misses the point. The IP being "involved in a merger," whatever that means, is not the triggering event. The triggering event is the actual merger of the IP, which never occurred. (Blue Dep. 129:11-14); Teichen Decl. ¶ 7.

*Second*, GSE's contention that Eagle was "wholly-owned by Harris, and is now a wholly-owned by L3Harris [*sic*]" (Doc. 56 at 23), while factually inaccurate,[6] actually undermines its Motion. Harris Corporation and L3Harris are the same entity—there was simply a name change. (Johnson Decl. ¶ 8.)  That the IP is indirectly held by the same entity demonstrates that it was never "sold, merged, or transferred."

---

[6] L3Harris owns Harris International, Inc., which owns Eagle Technology. Teichen Decl. ¶ 5.

*Third*, GSE's contention that Eagle Technology holds "virtually all of the Intellectual Property L3Harris [*sic*] for the benefit of L3Harris" (Doc. 56 at 23) is completely unsupported by any evidence. The intellectual property owned by L3 Technologies and its subsidiaries was never transferred to Eagle. (Teichen Dep. 11:2-11); Teichen Decl. ¶ 7-8.

*Fourth*, the relevance of GSE's statement that "L3Harris has the ability to both sell and license the Intellectual Property" (Doc. 56 at 23) is irrelevant. Having the ability to sell and license the IP is simply not a triggering event. Actually doing so is.

*Fifth*, GSE's assertion that "neither Harris nor Eagle has filed any documents with the U.S. Patent and Trademark office showing an assignment or transfer the Intellectual Property [*sic*]…." (*Id*.) is perplexing. Holding aside that there is no law requiring such[7]—GSE does not even contend that there is—this has nothing to do with whether the IP merged.

Simply put, GSE cannot circumvent the express requirement for a merger of IP to occur.

## V. <u>CONCLUSION</u>

Accordingly, L3Harris respectfully requests that this Court deny GSE's Motion for Summary Judgment in its entirety.

---

[7]All that is required to assign a patent is a written instrument between the assignor and the assignee. 35 U.S.C. § 261. That occurred here, when Harris Corporation assigned the IP to Harris International, and when Harris International assigned the IP to Eagle Technology. (Teichen Dep. Ex. 2, Ex. 3); Teichen Decl. ¶ 5, Ex. A-F.

Dated:        November 8, 2021              Respectfully submitted,

                                           _s/ James V. Etscorn_____
                                           James V. Etscorn
                                           Florida Bar No.: 705111
                                           William C. Bergmann
                                           *Admitted Pro Hac Vice*
                                           Brian C. Lawrence
                                           Florida Bar No. 0125550
                                           BAKER & HOSTETLER LLP
                                           200 South Orange Avenue, Suite 2300
                                           Orlando, FL  32801-3432
                                           Telephone: 407.649.4000
                                           Facsimile:  407.841.0168
                                           Email:  jetscorn@bakerlaw.com

                                           *Attorneys for L3Harris Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following:

Robert J. Stovash, Esq.
The VUE at Lake Eola
220 North Rosalind Avenue
Orlando, Florida 32801
Tel.    (407) 316-0393
Fax    (407) 316-8969
rstovash@sctlaw.com
elaluz@sctlaw.com

                                           _s/ James V. Etscorn_

4830-7703-4751.7